A. G. File No. O-5250-A



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable H. B. Virgil Crawford
County Attorney, Terry County
Brownfield, Texas

Dear Sir:

Opinion No. O-5250
Re: Purchase by city and
county of land for
airport and sale of
surplus land.

     This is in response to your letter of July 9, 1943, requesting the opinion of this department upon the following question:

     "Terry County, Texas and Brownfield, Texas, a county and a city desire to obtain a 320 acre tract of land by purchase to be used for an airport which will be jointly owned and controlled by the county and city. In order to acquire the 320 acre tract of land which is about the only desirable tract to be obtained, it will be necessary to purchase a section or 640 acres in one body. It is the desire of the county and city to purchase the whole 640 acres and then sell the 320 acres not desired to a private individual. Can Terry County or Terry County and the city of Brownfield purchase the 320 acres not desired for the airport and then turn around and sell it to a private individual without profit or loss on same?"

     Your question has two features, namely: whether the county and city may act jointly in purchasing and operating an airport; and, whether surplus land acquired for airport purposes may be sold without profit or loss.

Honorable H. B. Virgil Crawford, page 2

It is elementary, of course, that counties act through their governing bodies, the commissioners' court, whose authority is not plenary but strictly limited to the powers expressly or impliedly conferred by law. Authority to establish and maintain airports is contained in Article 1269h, Vernon's Annotated Civil Statutes, which provides in part:

"Section 1 A-That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire, by purchase without condemnation or by purchase through condemnation proceedings, and thereafter maintain and operate as an airport, or lease, or sell, to the Federal Government, tracts of land either within or without the corporate limits of such city and within the county in which such city is situated, and the Commissioners' Court of any county may likewise acquire, maintain and operate for like purpose tracts of land within the limits of the county.

"B - That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire by purchase without condemnation, and thereafter maintain and operate as an airport, or lease, or sell to the Federal Government, tracts of land without the county in which such city is situated, provided said tracts are not within five (5) miles of another incorporated city that has a population of more than fifteen hundred (1500) people, according to the last preceding Federal Census.

"C - That the governing body of any incorporated city in this State may, and is hereby empowered, to acquire through condemnation proceedings, tracts of land located without the county in which said city is located, provided said tracts of land are within six (6) miles of the county boundary of the county in which said city is located, and are not within five (5) miles of another incorporated city having a population in excess of fifteen hundred (1500) people, ac-

"Sec. 2. (a) For the purpose of condemning or purchasing, either or both, lands to be used and maintained as provided in Section 1 hereof, and improving and equipping the same for such use, the governing body of any city or the Commissioners Court of any county, falling within the terms of such Section, may issue negotiable bonds of the city or of the county, as the case may be, and levy taxes to provide for the interest and sinking funds of any such bonds so issued, the authority hereby given for the issuance of such bonds and levy and collection of such taxes to be exercised in accordance with the provisions of Chapter 1 of Title 22 of the Revised Civil Statutes of 1925.

"* * *

"Sec. 3. Any Air Port acquired under and by virtue of the terms of this Act shall be under the management and control of the governing body of the city or the Commissioners' Court of the county acquiring the same, which is hereby expressly authorized and empowered to improve, maintain and conduct the same as an Air Port, and for that purpose to make and provide therein all necessary or fit improvements and facilities and to fix such reasonable charges for the use thereof as such governing body or Commissioners' Court shall deem fit, and to make rules and regulations governing the use thereof. All proceeds from such charges shall be devoted exclusively to the maintenance, up-keep, improvement and operation of such Air Port and the facilities, structures, and improvements therein, and no city or county shall be liable for injuries to persons resulting from or caused by any defective, unsound or unsafe condition of any such Air Port, or any part thereof, or thing of any character therein or resulting from or caused by any negligence, want of skill, or lack of care on the part of any governing Board or Commissioners' Court, officer, agent, servant or employee or other person with reference to the construction, improvement, management, conduct, or maintenance of any such Air Port or any structure, improvement, or thing of any character whatever, located therein or connected therewith. * * *"

cording to the last preceding Federal Census;
and that said city may thereafter maintain and
operate as an airport, or lease, or sell, said
tracts to the Federal Government; provided, how-
ever, that the grant herein made to acquire land
through condemnation proceedings, without the
county in which said city is located, shall
expire on December 31, 1942, but that tracts of
land acquired prior to that date, and under the
authority of this Act may continue to be oper-
ated, leased, or sold, as provided in this Act.

"D - In addition to the power herein granted,
the Commissioners' Courts of the several coun-
ties of this State are hereby authorized to lease
any airport that may be acquired by the county,
as herein provided, to any incorporated city or
municipality within such county, or to the Federal
Government, for the purpose of maintaining and
operating an airport; and provided further that
any incorporated city having acquired land for
an airport, or an airport, under the authority
of this Act, shall have the right to lease said
land or said airport to the county in which said
incorporated city is located.

"E - In addition to the power which it may
now have, the governing body of an incorporated
city shall have the power to sell, convey, or
lease, all or any portions of any airports here-
tofore established or that may be hereafter es-
tablished, or any land acquired under the provi-
sions of this Act, to the United States of America
for any purpose deemed by the Government of the
United States necessary for National Defense, or
for air mail purposes, or any other public pur-
pose, or to the State of Texas, or any branch
of the State Government, or to any other person,
firm, or corporation, to carry out any purpose
necessary or incidental to National Defense or
training incidental thereto; and that such govern-
ing body shall provide rules and regulations for
the proper use of any such airports in connection
with the purposes stated herein.

Honorable H. B. Virgil Crawford, page 5

There are many instances in which the Legislature has authorized counties and cities to cooperate with each other in undertaking various projects. Without attempting to be exhaustive, we note for example that Article 4434, Revised Civil Statutes, provides for their cooperation in making improvements necessary to improve the public health and promote sanitary regulations; Article 2356 provides for their cooperation in erecting bridges; Article 4492 provides for their cooperation in establishing a hospital; Article 6018e provides for their cooperation in establishing parks and Article 4436a, V.A.C.S., cooperation in the formation of a city-county health units. Moreover, Article 5248e, V.A.C.S., provides that cities and counties may jointly acquire lands for the use of the Federal Government.

Article 1269h, V.A.C.S., however, does not provide for the joint acquisition, establishment and maintenance of an airport. It provides that either a city or a county may acquire land for airport purposes in the manner specified, and Section 3 provides that an airport so acquired shall be under the management and control of the governing body of the city or the commissioners' court of the county acquiring same. While one may lease to the other, (Section 1-D, Article 1269h) there are no provisions for joint action.

In Opinion No. 0-1000 this department held that, legislative authority lacking, a city and county could not legally enter into a partnership agreement to purchase a motor grader for road and street repair work.

In Opinion No. 0-2201 this department held that a county commissioners' court was not authorized, legislative authority lacking, to enter into a contract and partnership with a city and expend county funds for the construction and equipment of a city-county jail; and in Opinion No. 0-4985 we held that Navarro County had no authority to cooperate with the City of Corsicana in establishing and maintaining a city-county health unit.

Under Article 1269h either a county or a city may establish and maintain an airport but the methods therein provided are exclusive (Foster v. City of Waco, (Sup. Ct.) 255 S. W. 1104); and there is no legislative authority for

concerted action. It follows that in our opinion Terry County and Brownfield, Texas, may not jointly acquire and operate an airport.

Your second question is whether or not Terry County may acquire 320 acres not needed for an airport, (but which must be acquired in order to obtain the desired land) and then sell the same to a private individual without profit or loss.

Article 1269h, supra, contains ample authority for Terry County to purchase airport property by purchase without condemnation or by purchase through condemnation proceedings. It may employ its permanent improvement fund (Opinion No. O-4312) or it may issue bonds. Article 1577, Revised Civil Statutes, provides authority for the sale of county realty and specifies the manner of its disposition. See Scalf v. Collin County, (Sup. Ct.,) 16 S. W. 314.

In our opinion the question of whether or not Terry County should purchase 640 acres in order to obtain a choice 320-acre airport site, with the idea of disposing of the 320-acre surplus without profit or loss to the county is an administrative rather than a legal problem. If, in the exercise of their good business judgment and sound discretion, the Terry County Commissioners' Court believes it best to obtain the 640-acre tract by purchase without condemnation (selling without profit or loss the 320-acre surplus) rather than obtain the 320-acre tract by condemnation, we know of no legal objection. The problem arising in Moore v. Gordon, (Civ. App.) 122 S. W. (2d) 239, Writ Dismissed, does not present itself for all 640 acres will not have been dedicated for the use of the public as an airport.

The problem, as we see it, is the best way in which to obtain the 320 acre airport and that problem is one calling for the exercise of the Commissioners' Court's good business judgment.

APPROVED OCT 22, 1942

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By _Jas. D. Smullen_
Jas. D. Smullen
Assistant

_Groos Sellers_
ASSISTANT
ATTORNEY GENERAL

JDS:EP

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN